IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUNSHINE BEISTLINE,** | : | **Civil No. 3:25-CV-01803** |
| | : | |
| **Plaintiff** | : | **(Judge Wilson)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

Case law has long placed a duty of articulation upon Administrative Law Judges (ALJs) when deciding Social Security disability claims. Thus, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). A necessary

corollary to this duty of articulation is the concept that when a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). At a minimum this obligation to articulate the basis of a disability determination means that the ALJ's ruling must correctly state the facts as they relate to the claimant's disabilities. Accordingly, when an ALJ's decision rests upon a material misapprehension concerning the facts, a remand is often necessary.

The ALJ's decision in this case is striking in that it both rejects evidence for no reason and rests upon a material misapprehension. First, the decision contains a persistent error which Courts have identified relating to analysis of emotional impairments in that the ALJ failed to address or incorporate a limitation to one-to-two-step tasks opined by the state agency medical consultants whose opinions the ALJ found persuasive. While this error may have been harmless, it was compounded by another error: a blatant and material misstatement of the opinions of these same state agency opinions. Indeed, in crafting an RFC for the plaintiff, who has persistent migraines and fainting episodes, the ALJ—remarkably—concluded she "can frequently operate hazardous machinery, and she can tolerate a loud noise environment." (Tr. 34). In making these explicit findings, the ALJ credited the opinions of the state agency medical consultants which he characterized as stating

she could frequently operate hazardous machinery and tolerate a loud noise environment. Yet, upon review, these opinions in fact state quite the opposite. Indeed, one of these experts opined the plaintiff should avoid even moderate exposure to hazards, including machinery and heights, and both opined she should avoid concentrated exposure to noise due to her migraines and other impairments. (Tr. 213, 237). When coupled with the opinion of the consultative examiner, who opined the plaintiff should be limited to a quiet/library noise level, the ALJ's conclusion that the plaintiff could tolerate a loud noise environment stands in contrast to every medical source opinion.

Thus, the consensus of the medical opinion evidence—including both state agency expert opinions—clearly stated that Beistline should avoid concentrated exposure to noise. Notwithstanding this evidence, the ALJ found that Beistline could tolerate a loud noise environment. In reaching this result the ALJ concluded—incorrectly—that both state agency experts determined that Beistline could tolerate this level of noise. The ALJ then relied upon this inaccurate recital regarding the medical opinion evidence to support his residual functional capacity assessment, and his finding that Beistline was not disabled.

This conclusion rests on a misstatement of fact. Since the ALJ's decision was grounded upon this potentially material factual error concerning the medical opinion

evidence, we find that this evaluation of the medical opinion evidence is based upon "the wrong reason." Id. Coupled with the ALJ's rejection of the one-to-two-step limitation for seemingly no reason; this decision falls short of the standards of articulation which the regulations require. Accordingly, we recommend the Court remand this case for further consideration and evaluation of the medical opinion evidence.

## II. Statement of Facts and of the Case

In August of 2021, Sunshine Beistline filed an application for a period of disability and disability insurance benefits along with an application for supplemental security income pursuant to Titles II and XVI of the Social Security Act. (Tr. 27). In both applications, Beistline alleged an onset of disability beginning January 1, 2016.[1] (Id.) According to Beistline, she had become disabled due to the combined effects of the following severe impairments: postural orthostatic tachycardia syndrome (POTS), Ventricular tachycardia, syncope, chronic PTSD,

---

[1] This is Beistline's second application for disability benefits. An ALJ issued an unfavorable decision on her first application in September 2020 and that decision was affirmed by this Court in July 2022. (Tr. 178-205, 261). The Commissioner argues the plaintiff's onset date does not begin until September 25, 2020, the date of the prior ALJ decision, however the ALJ in the most recent decision considered the disability period from January 1, 2016, thus, we do not disturb this finding but rather recommend the Court leave this determination to the Commissioner on remand.

chronic anxiety, major depression, migraines, lung nodules, severe acid reflux, and vitamin deficiency. (Tr. 206). Beistline was born on November 2, 1983, and was thirty-two years old on the alleged disability onset date, making her a younger individual under the Social Security regulations. (Tr. 206).

Beistline participated in a series of hearings on her most recent disability application conducted by two different ALJs.[2] At the hearings, Beistline testified that her cardiovascular disorders, specifically POTS, caused her to experience frequent syncope and that she experienced migraines at least once or twice a week which were triggered by light and loud sounds. (Tr. 59-61, 105-06). The medical records reinforce these complaints, showing that, throughout the relevant period, Beistline complained of persistent migraines following a head injury in 2017.[3] (Tr. 655, 755, 1412, 1530, 1536, 1548). She was diagnosed with intractable migraine

---

[2] Beistline's status as a *pro se* claimant at these hearings posed challenges for the ALJs in collecting the requisite medical evidence to support the claimant's applications. At both April and August 2023 hearings, the plaintiff requested more time to obtain her medical records and to obtain counsel. (Tr. 156, 172). Another hearing was conducted in November 2023 at which Beistline and a vocational expert testified before ALJ Sharon Zanotto. (Tr. 74-119). Finally, a hearing was conducted on May 20, 2024, before ALJ Scott Staller who ultimately issued the decision in this case. Beistline and a vocational expert also testified at the May 2024 hearing. (Tr. 52-73).

[3] Clinical notes also reveal she suffered head trauma in a car accident when she was twelve years old in which her sister was killed. (Tr. 662).

without aura and explained that her migraine headaches had become "incapacitating." (Tr. 656). She was prescribed Depakote but did not take it due to the size and side effects of the medication. (Tr. 656, 737).

Throughout the record there is also evidence that Beistline experienced frequent episodes of dizziness, fainting, and loss of consciousness. She was eventually diagnosed with postal orthostatic intolerance in 2019. (Tr. 673). At various times she told providers she passed out anywhere from once a month to three times per week. (Tr. 591, 663, 683, 685). Her records repeatedly referenced that she was positive for syncope. (Tr. 659, 664, 676, 682, 1153, 1155). Multiple providers assessed that these episodes would be limiting in her everyday activities. In 2018 her neurologist stated she should not be driving because of the nature of these events, (tr. 663), and in 2018 she described an episode where she almost fell off a truck while working as an independent contractor due to a fainting episode. (Tr. 656, 662). Her neurologist explained "that it was not wise for her to be involved in that type of employment given the risk of her falling and hurting herself or possibly having a fatal outcome." (Id.) In 2021, her primary care provider noted she agreed with her cardiologist recommendation that she was currently "disabled from a cardiovascular standpoint." (Tr. 1153).

In March 2022, Beistline underwent a consultative examination with Dr. Ahmed Kneifati. (Tr. 1250). Dr. Kneifati noted her history of heart disease of ventricular tachycardia causing fatigue and shortness of breath as well as her POTS with vertigo and dizziness causing her to feel lightheaded and fall down which she reported could occur up to ten times a day. (Tr. 1250). He also noted her back pain and history of migraine headaches since 1996 which he indicated makes her sensitive to light and noises. (Id.) She reported getting migraines four times per week. (Id.) A physical examination was relatively unremarkable, revealing normal gait but squat limited to 50%, full hand and finger dexterity and strength in her extremities, nonetheless Dr. Kneifati described her prognosis as fair. (Tr. 1253).

Beistline also suffered from mental impairments including anxiety, depression, and PTSD. She testified that she is always nervous, does not like being around people, is forgetful and sometimes forgets where she is going when driving, has difficulty concentrating, and has thoughts of harming herself once or twice a month. (Tr. 61-65). Her records show she was referred to behavioral health in 2017 after a positive depression screening at her primary care doctor. (Tr. 1616). She reported experiencing symptoms of depression and anxiety for a few years including difficulty sleeping, constant crying, anxiety, weight loss, and suicidal ideation. (Tr. 1617). She also repeatedly attempted suicide, including two suicide attempts in

2016, (id.), another suicide attempt during the relevant period in 2018, and episodes of self-harm including cutting.[4] (Tr. 589). She reported a history of sexual abuse and trauma from the death of her sister in a car accident when she was twelve. (Tr. 979, 1617). At a 2018 psychiatric evaluation, she reported flashbacks several times per week and "weird dreams" every other night. (Tr. 975). She reported that she was unable to concentrate and had rapid changes in mood. (Id.) Her mood and affect were described as limited and restricted. (Tr. 981) She was diagnosed with chronic PTSD and recurrent severe major depressive disorder and was prescribed Prozac and Vistaril. (Tr. 982).

In March 2022, the plaintiff also underwent a consultative psychiatric evaluation with Dr. Kathleen Ledermann which revealed impaired attention and concentration, including difficulty with serial 3s and serial 7s and impaired recent and remote memory skills. (Tr. 1267). While she described to the psychiatric examiner the ability to dress, bathe, groom herself, manage money, and drive, she also stated she needs assistance with cooking, cleaning, doing laundry, and shopping. (Tr. 1268). She also explained to the examiner that she was unable to work

[4] In fact, the plaintiff referenced at her first hearing on this application that she "went home, I started cutting myself," after her first hearing before an ALJ who was questioning her about her weight. (Tr. 173).

because she "passes out too much." (Tr. 1265). Dr. Lederman described her prognosis as fair "given her POTS severity." (Tr. 1268).

Against this clinical backdrop, two non-examining State agency experts and a consultative examiner opined on Beistline's physical ability to perform work-related activity. Each of these experts recognized Beistline's migraines and syncope and included corresponding limitations. For example, while both non-examining experts opined that Beistline's migraines were non-severe, (tr. 220, 234), in March 2022, Dr. Glenda Cardillo opined that Beistline was capable of light work with some postural limitations but could never climb ladders, ropes, or scaffolds, should avoid concentrated exposure to noise and should avoid even moderate exposure to hazards such as machinery and heights due to her POTS and syncope and migraines. (Tr. 224). Similarly, in August 2022, Dr. Catherine Smith opined that Beistline was capable of light work with some postural limitations but should avoid concentrated exposure to noise and hazards such as machinery and heights and could never climb ladders, ropes, or scaffolds due to her POTS, AFID, and obesity. (Tr. 236-37). Thus, both State agency consultants reinforced that Beistline, who experienced recurring migraines and frequent episodes of fainting, should not be exposed to loud noise or hazards.

These opinions were largely echoed by the consultative examiner, Dr. Ahmed Kneifati. While Dr. Kneifati opined the plaintiff was capable of less than sedentary work, he also opined that the plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds, could only occasionally be exposed to moving mechanical parts and heights, and should be limited to a quiet (library) noise level. (Tr. 1259). Dr. Kneifati's checkbox opinion is somewhat enigmatic, providing little explanation for the limitations opined and stating the plaintiff's impairments did not affect the claimant's hearing or vision but that she should be limited to a quiet level of noise. (Tr. 1258). Nonetheless, the environmental limitations he opined are largely consistent with the non-examining sources and his own examination report which states that the plaintiff's migraines cause her to be sensitive to light and noise and that she frequently has episodes of POTS which cause her to feel lightheaded and fall down. (Tr. 1250).

Thus, the record reveals a broad medical consensus among examining and state agency expert sources that Beistline's migraines and POTS would cause her to require limitations in her ability to be exposed to noise and hazards.

Three experts also opined on Beistline's mental abilities in the workplace. Consultative examiner Dr. Lederman observed that Beistline had moderate limitations in understanding, remembering, and carrying out complex instructions

and making judgments on complex work-related decisions due to her memory and concentration problems. (Tr. 1270). She also endorsed mild limitations in interacting appropriately with the public, supervisors, and coworkers as well as limitations in her ability to concentrate, persist, or maintain pace. (Tr. 1271). The non-examining psychological consultants also opined that Beistline would be limited in her mental functioning. In fact, both State agency psychological consultants opined that Beistline had moderate limitations in her ability to concentrate, persist, or maintain pace and that she "can perform one- or two-step, routine tasks in a stable environment." (Tr. 214, 215, 238).

It was against this clinical backdrop that a series of hearings were conducted regarding Beistline's disability application. (Tr. 52-177). Following these hearings, on July 26, 2024, the ALJ issued a decision denying Beistline's application for benefits. (Tr. 24-41). In that decision, the ALJ first concluded that Beistline met the insured status requirements of the Social Security Act through December 31, 2022, and had not engaged in substantial gainful activity since January 1, 2016, the alleged onset date. (Tr. 30). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Beistline suffered from the following severe impairments: postural orthostatic tachycardia syndrome (POTS), cardiac dysrhythmia, cervical degenerative disc disease, depressive disorder, anxiety disorder, and post-traumatic

stress disorder (PTSD). (Id.) The ALJ also considered her migraines but concluded they were nonsevere, noting,"[w]hile she noted fifteen headaches days per month to neurology, the medical records showed normal findings in the clinical setting. MRI studies of the brain showed no acute process. She denied phonophobia, photophobia, nausea, vomiting, or weakness associated with migraine headaches (Exhibits B8F, B11F/26, B16F/11, and B33F)." (Tr. 31).

At Step 3 the ALJ determined that Beistline did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 31-33). In considering her mental impairments, the ALJ's analysis largely mirrored the opinions of the opining experts that Beistline had moderate limitations in concentrating, persisting, or maintaining pace, and mild limitations in the other areas of mental functioning. (Id.)

The ALJ then fashioned the following RFC for the plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch or crawl. The claimant can tolerate frequent exposure to unprotected heights, humidity, wetness, atmospheric conditions, extreme cold, extreme heat and vibrations. She can frequently operate hazardous machinery, and she can tolerate a loud noise environment. The claimant can understand, remember or carry out simple instructions. The claimant, can perform tasks that do not involve a

> specific production rate pace, such as assembly line work or an hourly production quota. The claimant can deal with occasional changes in a routine work setting. She can make judgments on simple, work-related decisions.

(Tr. 34).

This RFC was remarkable in that it explicitly stated that the plaintiff, who suffered from migraine headaches and frequent episodes of fainting, "can frequently operate hazardous machinery, and she can tolerate a loud noise environment." (Id.)

In arriving at this RFC, the ALJ's analysis includes a series of misstatements, errors, and internal inconsistencies. At the outset this RFC deviated from all of the medical opinions in this case, yet the ALJ characterized this RFC as consistent with the State agency sources. On this score, the ALJ found the opinions of Dr. Cardillo and Dr. Smith persuasive, yet misstated the state agency expert medical opinion evidence. According to the ALJ:

> The undersigned finds persuasive the March 2022 medical opinion of Glenda Cardillo, MD (Exhibits B2A/7-9 and B3A/7-9), and the August 2022 medical opinion of Catherine Smith, MD (Exhibits B6A/6-8 and B8A/6-8), to the extent the opinions show that the claimant can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; can tolerate frequent exposure to unprotected heights, humidity, wetness, atmospheric conditions, extreme cold, extreme heat, and vibrations; *can frequently operate hazardous machinery; and can tolerate a loud noise environment.* The opinions are consistent with the objective clinical findings of normal gait, five out of five strength in the

> upper and lower extremities, good ranges of motion and movement, normal cardiac sounds, normal heart rate and rhythm, normal diagnostic cardiac testing, and cervical radiographic studies with radiculopathy and are supported by the longitudinal medical records showing medication management of the symptoms. Dr. Cardillo and Dr. Smith support their opinions with citation to the medical evidence. Moreover, the undersigned notes that Dr. Cardillo and Dr. Smith are state agency physicians who have had an opportunity to examine and review the medical records submitted prior to their opinions and are familiar with the Social Security disability rules and regulations. The medical evidence submitted after their review does not suggest greater functional limitations.

(Tr. 37) (emphasis added). While the ALJ concluded these opinions stated Beistline could frequently operate hazardous machinery and tolerate a loud noise environment, in fact, Dr. Cardillo clearly state that Beistline should avoid concentrated exposure to noise and should avoid even moderate exposure to hazards such as machinery and heights, (tr. 224), and Dr. Smith opined that the plaintiff should avoid concentrated exposure to noise and hazards such as machinery and heights. (Tr. 236-37). Thus, the ALJ's RFC finding the plaintiff could be exposed to loud noise and could frequently operate hazardous machinery was based upon a fundamental misstatement of the medical opinion evidence. This RFC was also at odds with every medical opinion, including the consultative examiner who opined Beistline should be limited to a quiet (library) noise level.

The ALJ then reinforced this error in reconciling the medical opinion evidence with the RFC. In finding the medical evidence and opinions support the RFC, the ALJ explained:

> Due to potential for injury, aggravation of symptoms from severe and non-severe impairments, or a possible syncope episode, the undersigned finds that she can tolerate frequent exposure to unprotected heights, humidity, wetness, atmospheric conditions, extreme cold, extreme heat, and vibrations; can frequently operate hazardous machinery. Due to potential for aggravation of non-severe migraine headaches, the undersigned finds that she can tolerate a loud noise environment.

(Tr. 39). Thus, the ALJ explained in a contradictory fashion that he accounted for her frequent fainting by concluding she could frequently operate hazardous machinery and accounted for the potential for aggravation of her migraine headaches by concluding she can tolerate a loud noise environment. This conclusion ignores both the practical realities of the plaintiff's impairments and all of the medical opinion evidence.

The ALJ's assessment of the plaintiff's mental impairments was also flawed in that the ALJ found the opinions of all three psychological consultants persuasive, yet failed to either reject or incorporate the one-to-two step task limitations opined by both State agency experts. (Tr. 38). Instead, the ALJ inexplicably observed that, "Dr. Gavazzi and Dr. Fink support the opinion with citations to the medical evidence

suggesting that the claimant can make simple decisions, can maintain regular attendance and punctuality, and can carry out very short and simple instructions, and can perform one- to two-step, routine tasks in a stable environment," yet the RFC includes no such one-to-two-step limitation and there is no explanation as to why this limitation was not accepted. (Tr. 38).

The ALJ then relied upon this flawed analysis of the all the medical opinion evidence to support his residual functional capacity assessment, and his finding that Beistline was not disabled. (Tr. 39-41).

This appeal followed. (Doc. 1). On appeal, Beistline challenges, *inter alia*, the ALJ's evaluation of her migraine headaches and her mental RFC. Since we find that this medical opinion evidence is internally inconsistent, ignores relevant evidence for no reason, and rests upon a material factual error, we agree that the RFC is not supported by substantial evidence in this case. Therefore, we recommend this case be remanded for further consideration and evaluation of the medical opinion evidence.

## III. <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase “substantial evidence” is a “term of art” used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains “sufficien[t] evidence” to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of “substantial” in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is “more than a mere scintilla.” Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—“such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner’s finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) (“[I]t has been held that an ALJ’s errors of law denote a lack of substantial evidence.”) (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) (“The Secretary’s determination as to the status of a claim requires the correct application of the law to the facts.”); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be

set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical

opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

Beistline filed her disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.

According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Finally, with respect to assessing competing medical opinion evidence, it is clear beyond peradventure that:

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983).

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

### D. This Case Should Be Remanded for Further Consideration of the Medical Opinion Evidence.

This case presents a striking circumstance in which the ALJ's decision contains at least two errors with regard to the medical opinion evaluation.

At the outset, this Court, and others, have specifically concluded that "when a medical opinion is found persuasive and contains a limitation to one- and two-step tasks, the ALJ is obligated to either: (1) include the limitation in the RFC and limit the claimant to reasoning level one occupations, or (2) identify the substantial evidence that the ALJ is relying on in rejecting the limitation." Cruz v. Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025) (citing Steinmetz v. Colvin, Civ. No. 23-CV-2066, 2025 WL 36159, *7 (M.D. Pa. Jan. 6, 2025); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). See also Rita R. v. Kijakazi, No. 21 C 5631, 2023 WL 2403139, at *3–4 (N.D. Ill. Mar. 8, 2023) ("Indeed, an ALJ is required to provide a thorough and appropriate explanation for rejecting a state agency psychologist's opinion that a claimant is limited to one-to-two step tasks."). Therefore, when an ALJ's decision neither includes a one-to-two-step limitation set forth in a persuasive medical opinion, nor explains why it was not incorporated into the RFC, we have held that a remand is necessary.[5]

[5]See e.g., ADRIENNE LOMBARDO, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:24-CV-56, 2026 WL 674198, at *1 (M.D. Pa. Mar. 10, 2026); SARAH C., Plaintiff, v. FRANK BISIGNANO, Defendant., No. 1:23-CV-01828, 2026 WL 625094, at *1 (M.D. Pa. Mar. 5, 2026); FRED MCCLEARY, Plaintiff v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant., No. 4:25-CV-26, 2026 WL 625113, at *1 (M.D. Pa. Mar. 5, 2026); Delillo v. Bisignano, No. 4:25-CV-523, 2026 WL 592389, at *1 (M.D. Pa. Mar. 3, 2026); Whitney v. Bisignano, No. 4:24-CV-1950, 2026 WL 522922, at *10 (M.D. Pa. Feb. 25, 2026); Cruz v.

Here, the ALJ clearly failed to either adopt the one-to-two-step limitation in the opinions he found persuasive or explain why it was not incorporated into the RFC. This was error.

Yet:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.' " Hyer v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), report and recommendation adopted, No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018). Under this harmless error paradigm, we have found this precise error harmless where a vocational expert has identified jobs the plaintiff could perform even if the RFC included a limitation to one-to-two-step tasks. Danner v. Bisignano, No. 4:25-CV-285, 2026 WL 657746, at *1 (M.D. Pa.

---

Bisignano, No. 1:24-CV-1966, 2025 WL 2813882, at *7 (M.D. Pa. Sept. 30, 2025); Michelle M. v. Bisignano, No. 3:23-CV-02163, 2025 WL 2713737, at *7 (M.D. Pa. Sept. 23, 2025); Warren v. Dudek, No. 1:24-CV-635, 2025 WL 1168276, at *6 (M.D. Pa. Apr. 22, 2025); Shipman v. Kijakazi, No. 3:22-CV-00636, 2023 WL 5599607, at *10 (M.D. Pa. Aug. 29, 2023).

Mar. 9, 2026); Hain v. King, No. 3:23-CV-1940, 2025 WL 976702, at *13 (M.D. Pa. Feb. 13, 2025), report and recommendation adopted sub nom. Hain v. Dudek, No. 3:23CV1940, 2025 WL 980489 (M.D. Pa. Mar. 31, 2025); Drozd v. Kizakaji, No. 1:21-CV-2063, 2023 WL 122387, at *11 (M.D. Pa. Jan. 6, 2023).

On this score, in considering whether this error was harmless, we note that this Court has concluded that, "an individual limited to one-and two-step tasks is likewise limited to reasoning level one occupations." Cruz, 2025 WL 2813882, at *7. Here, supported by the testimony of a vocational expert, the ALJ concluded the plaintiff could perform the jobs of marker, collator operator, and housekeeping cleaner. Two of these occupations, marker and collator operator, require reasoning level 2, which is inconsistent with a one-to-two-step task limitation. Marker, DICOT 209.587-034, 1991 WL 671802; Collator Operator, DICOT 208.685-010, 1991 WL 671753. Yet, the occupation of housekeeping cleaner, for which the vocational expert identified over 175,000 jobs, requires only a reasoning level of one. Thus, had this been the only error committed by the ALJ, we may not have considered this case to be worthy of remand.

Unfortunately, while this error may not have ultimately affected the outcome of this case standing alone, this error was compounded by another serious error, the

combined effects of which, "likely affect[ ] the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" Harrison, 2018 WL 2051691, at *5. Indeed, it is clear that the ALJ's medical opinion evidence evaluation rests upon a false premise, the notion that both state agency experts agreed that Beistline, who suffers from migraine headaches and frequent syncope, could frequently operate heavy machinery and withstand a loud noise environment.

This was error. In fact, the opinion evidence said the opposite of what the ALJ stated. Instead, that opinion evidence revealed a broad consensus among examining and state agency sources that Beistline should avoid exposure to noise and hazards such as heavy machinery due to these impairments. This error became even more apparent when the ALJ summarized his analysis of the opinion evidence and seemed to indicate that he accounted for her frequent fainting by concluding she could frequently operate hazardous machinery and accounted for the potential for aggravation of her migraine headaches by concluding she could tolerate a loud noise environment. (Tr. 39). Because the ALJ misstated the opinion evidence in a fundamental, and fundamentally prejudicial way, a remand is necessary here. This is not a novel conclusion on our part. Quite the contrary, it is entirely in accord with our past practice when presented with ALJ decisions which are based upon a misapprehension regarding the medical expert opinions. See e.g., Lee v. Dudek, No.

3:24-CV-00893, 2025 WL 757132, at *1 (M.D. Pa. Mar. 10, 2025); Dunn v. Kijakazi, No. 1:21-CV-91, 2022 WL 17584231, at *11 (M.D. Pa. Dec. 12, 2022); Perfinski v. Saul, No. 1:20-CV-78, 2021 WL 1060360, at *8 (M.D. Pa. Mar. 19, 2021).

Moreover, in the absence of some further explanation and articulation of its rationale, the ALJ's decision cannot be reconciled with the revised medical opinion regulations that the ALJ was obliged to follow. Those regulations eschew any hierarchical ranking of opinions, but call upon ALJ's to evaluate medical opinions against the following benchmarks:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.
>
>> (i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> (ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).
>
> (iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).
>
> (iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).
>
> (v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

20 C.F.R. § 404.1520c.

In this case, once the medical opinions are correctly described it is apparent that there was a consensus among the sources that Beistline's impairments would require limitations in her ability to be exposed to noise and hazards. Thus, when we consider the consistency of the medical opinions—one of the key factors which must now be assessed—it is evident that the greater weight of consistent opinion evidence favors a finding that Beistline should, at least, not be exposed to loud noise or hazards. Moreover, these opinions represented not only the consensus of the medical

opinion evidence, but also represent the opinion of the only examining source who had greater opportunities to assess Beistline's limitations. In light of this significant medical evidence which undermined the ALJ's RFC determination, and the fact that this RFC seems to rest upon a basic misunderstanding regarding the true state of the medical opinions, a remand is necessary in this case.[6]

In sum, under the regulations governing evaluation of medical opinion evidence, more is needed by way of explanation in this case. Since the ALJ's burden of articulation is not met in the instant case, we recommend this matter be remanded for further consideration by the Commissioner.

## IV. <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be REMANDED for further consideration.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the

---

[6] We note that all three occupations identified by the ALJ require exposure to a moderate level of noise. Marker, DICOT 209.587-034, 1991 WL 671802; Collator Operator, DICOT 208.685-010, 1991 WL 671753; Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783. Nonetheless, we need not determine whether this is consistent with the noise limitation opined by the experts since the multiple errors in this decision clearly implicate the perceived fairness of this proceeding and cannot be harmless.

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of October 2026.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge